# Young, to use, v. Brady. Draper's Appeal.

*Mortgages—Equitable mortgage—Owner's right to subrogation —Special contract—Distribution of purchase-money.*

1. Upon the distribution of a balance of purchase-money realized upon a sheriff's sale of real estate, the owner of the property sold cannot claim a reimbursement for moneys expended for taxes and liens where it appears that such owner took title under a special agreement to pay mortgage, interest, and all other charges on the property, which agreement contemplated the existing first mortgage and also an equitable second mortgage which was in excess of the balance for distribution.

2. In such case it is immaterial that the claimant had paid and taken an assignment of a sewer claim which constituted a lien prior to that of the second mortgage, such payment having been within the scope of his agreement and part of the consideration for the property.

3. In such case the fact that a third party had advanced money to pay interest on the first mortgage did not entitle her to be paid prior to the equitable mortgagee, where it appeared that such advance was but a personal loan.

Argued May 20, 1915. Appeal, No. 115, January Term, 1915, by James W. Draper, from decree of C. P. No. 1, Philadelphia Co., Sept. T., 1912, Nos. 4239 and 4240 consolidated, dismissing exceptions and making distribution in the case of Charles A. Young, to the use of George B. McCracken v. John S. Brady and James W. Draper. Before BROWN, C. J., POTTER, ELKIN, MOSCH-ZISKER and FRAZER, JJ. Affirmed.

Rule to pay the proceeds of a sheriff's sale of real estate into court. Exceptions to auditor's report. Before BREGY, P. J.

The facts appear by the opinion of the Supreme Court.

The court dismissed the exceptions. James W. Draper appealed.

1915:]     Assignment of Error—Opinion of the Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*E. Spencer Miller* for appellant.

*Forrester H. Scott,* with him *Henry J. Scott,* for appellee.

OPINION BY MR. JUSTICE FRAZER, July 3, 1915.

John H. Scott and Forrester H. Scott conveyed to William A. Reynolds, at the request of George S. Bond by deed dated May 4, 1909, and recorded May 7, 1909, a piece of land situated in the City of Philadelphia and at the same time an agreement was entered into by Reynolds and Bond with the Scotts which recited the vendors were loaning to the vendees the sum of $6,000, as part of the purchase-price of the land, which sum was to be secured on the land and paid out of proceeds of sale made within two years. Subsequently by deed recorded July 12, 1909, title was transferred by Reynolds to Mrs. Theresa Smith, a sister of Bond, the latter being the real party in interest. This conveyance was made for the purpose of defeating any claim Bond's wife might have if he had taken title in his name. To pay carrying charges the land was conveyed to Robert Kaighn by deed recorded May 23, 1911, and an agreement, made April 1, 1911, executed by Kaighn, Bond, and Draper, recited that Kaighn held the legal title to the property and provided that he and James W. Draper were to pay the mortgage interest and the taxes, liens, and other charges, due or to become due on the property, until it shall be sold, and reimburse themselves out of the proceeds of the sale, the profits, if any, to be divided between the three parties to the agreement in equal parts. Draper subsequently bought the interest of Kaighn and upon receiving the deed for the property from him, refused to make further advances, except to pay interest on the first mortgage and procure an as-

signment of a sewer claim, under which the city threatened to sell the premises. The agreement above referred to for the payment of the $6,000 was duly recorded May 7, 1909, and subsequently judgment obtained in an action thereon in the Court of Common Pleas No. 4, of Philadelphia County, as of March Term, 1911, No. 918. Upon default in the payment of interest on the first mortgage at the time provided, a sci. fa. was issued in October, 1912, and on December 4th, following judgment for want of an appearance entered and damages assessed at $9,703.50. A sheriff's sale followed but the terms of the sale were not complied with and upon a resale the property was purchased by an agent acting in behalf of George Connell and John S. Kane for the sum of $30,000. After satisfaction of the mortgage debt and interest and payment of costs, etc., there remained of the purchase-money a total of $5,850.95 which sum was paid into court by the sheriff for distribution. An auditor was appointed who awarded the fund to Forrester H. Scott as executor of John H. Scott, then deceased, less a specified amount deducted from the award and directed to be paid to Connell and Kane as damages for breach of the contract made by Scott to sell and convey to them the property: (See next case). The court below dismissed exceptions filed to the report. Draper then took this appeal from the award to Scott and now claims the advances made by him to pay the carrying charges and also to procure an assignment of a sewer assessment were entitled to priority over the mortgage and judgment held by Scott.

It is admitted the agreement of May 4, 1909, to pay the balance of purchase-money, constituted an equitable mortgage against the property. Appellant contends he is entitled to reimbursement to the extent of taxes and liens paid by him, which payments accrued to the benefit of the holder of the second encumbrance. He further contends he was not the owner of the property but took title to protect the above advances and as the liens and

encumbrances would have been prior to the claim of the holder of the second mortgage, he was therefore entitled to subrogation to the extent to which he had benefited such mortgagees. This contention cannot be sustained under the facts of the case. The agreement of May 4th, recited a conveyance from Scott to Reynolds subject only to the arrangement for payment of $6,000 of the purchase-price. This is the only interest Scott then had in the property. The agreement of April 1, 1911, between Kaighn and Bond and Draper, gave Bond and Draper a claim against the land or the proceeds realized from its sale, as against Kaighn to the extent of the money which they advanced, and, after this deduction was made, the parties were to share pro rata in whatever profits might remain. In making this agreement the parties were acting as joint owners and necessarily had in mind not only the first mortgage on the property, but also the second equitable mortgage, which had been duly recorded long prior to that time. While they would possibly be entitled to subrogation among themselves if one paid a greater share of the charge than he was entitled to pay under the agreement: Thompson v. Griggs, 31 Pa. Superior Ct. 608, Scott would not be concerned with that situation. Appellant Draper in finally acquiring the interest of the others took it subject to all prior liens and encumbrances against the property, which he expressly agreed to pay. He became owner subject to all the incidents and burdens of ownership and is therefore not in a position to be subrogated to the rights of the prior mortgagee: Dollar Savings Bank v. Burns, 87 Pa. 491. The conclusion of the auditor was therefore correct in holding appellant was without right to make claim on the fund prior to that of the junior mortgagee so far as the carrying charges on the first mortgage were concerned.

The same reasoning applies to the sewer lien which appellant paid. Under section three of the Act of June 4, 1901, P. L. 364, 3 Purd. 2631, pl. 12, this claim became

a lien prior to all obligations except taxes. Had appellant refused to pay this charge it would have participated in and been payable out of the proceeds of the sale. He now claims that having taken an assignment of the claim it is still in existence and he is entitled to subrogation under the claim against the fund for distribution on the theory that he thereby benefited the other lien creditors. The answer to this contention is that in the agreement between the parties above referred to, appellant agreed "to pay mortgage interest, due or to become due, on the said property, taxes, liens and all other charges, due or to become due, and payable thereon until the same shall be sold." The payment of existing and future liens was therefore a part of the consideration for the property. The language of Mr. Chief Justice Black in Carpenter v. Koons, 20 Pa. 222, is applicable to appellant's contention. It was there said (p. 227), "The Act of April 6, 1830, P. L. 293, provides that if the oldest lien be a mortgage and the land be sold on a judgment the sheriff's vendee shall take it subject to the mortgage. When the defendant made his purchase therefore he had manifestly no claim, either on the mortgagor or on anybody else, to pay off the whole mortgage and relieve him entirely from what was probably the most burdensome part of his contract. His share of the mortgage formed a part of the price he agreed to pay for the land." In Dollar Savings Bank v. Burns, supra, this court by Mr. Justice Gordon, after quoting the above language, said (p. 497): "The like doctrine is held in Hansell v. Lutz, 20 Pa. 284, already cited. And in Cooley's App., 1 Grant 401, where certain persons who had purchased an estate at sheriff's sale encumbered by prior mortgages, paid off those mortgages and took an assignment, it was held they were not entitled to be paid out of the assigned estate of the mortgagor. The court there said citing Hansell v. Lutz that the purchasers bought subject to the prior mortgages and that when they paid them they did noth-

ing more than their duty, and that the taking of an assignment to themselves was wholly fruitless. So then on authority when McClurkin paid the mortgage he did no more than under the Act of 1830 was his duty to do. His assignment was fruitless and gave him no right when executed and the force of a sale afterwards certainly did not help the matter. If, by force of that assignment he had no right as against the mortgagor, nothing that he could afterwards do would put into that paper what was not there when it was made." Another case in point is Searight's Est., 163 Pa. 222, where it was held an executor of an insolvent estate, who in good faith and belief that the estate was solvent, paid a judgment against decedent was not entitled to subrogation to the rights of the judgment creditors out of the proceeds of real estate as against junior liens of record on the date of the sale. It was said by Mr. Justice MITCHELL (p. 227) : "There were lien creditors with rights of priority between themselves and as to other creditors. They stood in line and when one of them stepped out by expiration of his lien or payment or any other cause all those in the rear advanced a step towards the front. Their rank and standing were fixed absolutely as a matter of law by the sale. After that no new rights of lien or claim on the proceeds could be acquired by subrogation or otherwise." It is contended, however, the sewer lien still exists because it was not satisfied of record but judgment was entered and marked to the use of Robert Kaighn, who at the time was interested with appellant, and that its validity and status were judicially determined by virtue of Forrester H. Scott's subsequent rule taken to show cause why the judgment should not be opened and set aside and the lien stricken off as fully paid. This rule was discharged by the court below without an opinion and it is contended such action was a judicial determination that the claim still exists as a valid lien against the property. As the rule contained a request to open and set aside and also to

strike off the lien, it was bad for multiplicity and the court's action in discharging it was proper. Furthermore, a judgment may be stricken off only because of irregularities appearing on the face of the record (Davidson v. Miller, 204 Pa. 223,) and the action of the court may have been put on this ground. However this may be, it does not alter the fact that the claim was paid and taken over by the owner of the premises.

Theresa Smith advanced to her brother the sum of $500 which was used by him to pay interest on the mortgage and she now claims this amount was entitled to participate in the distribution and have priority over the second mortgage. The answer to her claim is the money was in fact a loan to her brother and she must look to him for payment.

The appeal is dismissed.